# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

**April Braun et al.,**

   **Plaintiffs,**

**v.**                  **Case No. 09-2560-JWL**

**Superior Industries
International, Inc.,**

   **Defendant.**

## MEMORANDUM & ORDER

  Plaintiffs, individually and on behalf of others similarly situated, filed this wage and hour suit against defendant Superior Industries International, Inc., alleging violations of the overtime provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq. Specifically, plaintiffs, all current or former hourly employees, allege that defendant required its employees to perform off-the-clock pre-shift work and off-the-clock post-shift work. This matter is presently before the court on plaintiffs' motion for conditional class certification under § 216(b) of the FLSA (doc. # 66). As set forth in more detail below, the motion is granted in part and denied in part.

**Standard**

  Section 216(b) of the Fair Labor Standards Act of 1938 provides for an opt-in class action where the complaining employees are "similarly situated." 29 U.S.C. § 216(b). The Tenth Circuit has approved a two-step approach in determining whether plaintiffs are "similarly

situated" for purposes of § 216(b). *See Thiessen v. General Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001). Under this approach, a court typically makes an initial "notice stage" determination of whether plaintiffs are "similarly situated." *See id.* at 1102 (citing *Vaszlavik v. Storage Tech. Corp.*, 175 F.R.D. 672, 678 (D. Colo. 1997)). That is, the district court determines whether a collective action should be certified for purposes of sending notice of the action to potential class members. *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995). For conditional certification at the "notice stage," a court "require[s] nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *See Thiessen*, 267 F.3d at 1102 (quoting *Vaszlavik*, 175 F.R.D. at 678). The standard for certification at the notice stage, then, is a lenient one. *See id.* at 1103. At the conclusion of discovery, the court then revisits the certification issue and makes a second determination (often prompted by a motion to decertify) of whether the plaintiffs are "similarly situated" using a stricter standard. *Id.* at 1102-03. During this "second stage" analysis, a court reviews several factors, including the disparate factual and employment settings of the individual plaintiffs; the various defenses available to defendant which appear to be individual to each plaintiff; and fairness and procedural considerations. *Id.* at 1103.

As a threshold matter, the parties dispute whether the court should apply the lenient "notice stage" standard to plaintiffs' motion (the approach urged by plaintiffs) or whether the court should apply a less lenient standard in light of the discovery that has occurred thus far (the approach urged by defendant). According to defendant, this court should apply the "intermediate" approach that it utilized in *Thiessen* on the basis that the amount of discovery that

2

had taken place in *Thiessen* is similar to the amount of discovery that has occurred here. The court, of course, is intimately familiar with the factual record developed in *Thiessen* at the time the plaintiffs moved for conditional certification. The discovery that has occurred in this case is not remotely close to the level of factual development that had occurred in *Thiessen* at the time the court issued its order. Here, the scheduling order has permitted the parties to engage in discovery only on "pre-certification" issues and only three depositions have been taken in this case. No scheduling order concerning merits discovery has been entered and no trial date has been set. In such circumstances, the court declines defendant's invitation to bypass the initial notice stage determination. *See Garcia v. Tyson Foods, Inc.*, 255 F.R.D. 678, 686 (D. Kan. 2009) (refusing to bypass lenient notice stage under similar circumstances). Thus, the court looks to the "substantial allegations" in plaintiffs' amended complaint as supplemented by certain evidence submitted by plaintiffs.

**Background**

Consistent with the standard articulated above, the following facts are based on the allegations in plaintiffs' amended complaint as supplemented by certain evidence submitted by plaintiffs. Defendant operates and has operated facilities in several states for the purpose of manufacturing various types of wheels for automobiles. Specifically, defendant presently operates facilities in Rogers, Arkansas and Fayetteville, Arkansas. Defendant formerly operated facilities in Pittsburg, Kansas; Van Nuys, California; and Johnson City, Tennessee. Plaintiff April Braun was employed by defendant as a non-exempt hourly worker at its Pittsburg, Kansas

3

facility and plaintiff Albert Williams, Jr. is presently employed by defendant as a non-exempt hourly worker at its Fayetteville facility. In addition to the two named plaintiffs, seven individuals have opted-in to this action. Six opt-in plaintiffs are former non-exempt hourly employees at the Pittsburg facility; one opt-in plaintiff is a former non-exempt hourly employee at defendant's Fayetteville facility.

According to sworn statements provided by plaintiffs,[1] defendant routinely required plaintiffs to perform pre- and post-shift work without compensation and this "off the clock" work caused plaintiffs to work in excess of 40 hours per week without the requisite overtime pay. Plaintiffs further aver that, at their respective facilities, other hourly non-exempt employees were required to perform pre- and post-shift work without compensation. Although most of the sworn statements do not describe the nature of the off-the-clock work plaintiffs allegedly were required to perform, plaintiffs each aver that they spent time "performing duties necessary to perform my job." Additional detail, however, is provided in the sworn statement of opt-in plaintiff John F. Murphy and the deposition testimony of plaintiff April Braun, opt-in plaintiff Mark J. Raleigh and opt-in plaintiff Gregg Lovell.

---

[1]Named plaintiff Albert Williams, Jr. and opt-in plaintiffs Angelette Chatman and Charles Taylor failed to appear for their properly noticed depositions. The court denied defendant's motion to dismiss the claims of these plaintiffs, but permitted these plaintiffs to elect one of two remedies for their failure to appear–either striking all evidence offered by these plaintiffs in connection with the motion for conditional certification or staying the proceedings until defendant had an opportunity to depose these plaintiffs at plaintiffs' expense. These plaintiffs elected to have the court strike all evidence offered by them in connection with the present motion. In analyzing plaintiffs' motion, then, the court disregards the sworn statements of these three plaintiffs.

According to Mr. Murphy,[2] a former employee at defendant's Pittsburg facility, a supervisor, near the start of Mr. Murphy's employment, instructed him that employees needed to arrive at work early in order to begin "pre shift work" 5 to 10 minutes prior to the start of the shift. Mr. Murphy avers that he was reminded of this policy at least on a weekly basis. By way of example, Mr. Murphy avers that an employee in the Machine Shop had to be on the line at least 10 minutes prior to the start of a shift to transfer paperwork and obtain information about "what was running." Mr. Murphy also avers that, for a period, he worked as a Team Leader in the Finishing Department and enforced the policy requiring employees to be ready to work at least 5 to 10 minutes prior to the start of a shift. According to Mr. Murphy, he verbally disciplined at least five employees for failing to be ready to work 5 to 10 minutes prior to the start of a shift. Mr. Murphy avers that he approached his supervisor about this policy and was told that "there was enough downtime during the shift that it offset the unpaid work."

The deposition testimony of Ms. Braun and Mr. Lovell support Mr. Murphy's statements concerning off-the-clock work at the Pittsburg facility. Ms. Braun testified that employees were

---

[2]Mr. Murphy filed his consent-to-join form after the filing of plaintiffs' motion and his sworn statement was not provided until the filing of plaintiffs' reply brief. In a surreply, defendant objects to Mr. Murphy's statement on the grounds that it constitutes "new" evidence that defendant did not have an opportunity to challenge through a deposition or written discovery requests. The court rejects this argument. First, the existence of Mr. Murphy and his role in enforcing the alleged policy has been known to defendant since at least May 2010, when Ms. Braun submitted to defendant an interrogatory response that included a statement that Mr. Murphy, at times, told facility employees to get out of the break room and "go get dressed" before the start of a shift. Second, the court is aware of no authority (and defendant directs the court to none) requiring plaintiffs to disclose, prior to the close of pre-certification discovery, all potential witnesses they might seek to use in support of a motion for conditional certification.

5

told in meetings on more than one occasion that they had to be "in the E room"[3] at least 5 to 10 minutes prior to the start of a shift and that, prior to entering the E room, employees had to be "dressed."[4] According to Ms. Braun, employees were required to complete paperwork and, depending on an employee's job duties, make sure that the equipment was running properly. Mr. Lovell testified that employees, prior to the start of a shift, were required to obtain various personal protective equipment, including ear plugs, hard hats, gloves, boots and safety glasses. Moreover, some employees were required to obtain tools and cleansers from the tool crib prior to the start of a shift. With respect to post-shift work, Ms. Braun testified that employees were required to "blow out" the hoses and spray guns, clean the booth, turn in paperwork and remove their "suits" and place them in the hamper. With respect to the Fayetteville facility, Mr. Raleigh testified that his supervisor required employees to arrive at work early to ensure that the machines were running properly and to participate in pre-shift meetings. He testified that he only performed post-shift work if he was in the process of repairing a machine and stayed late to finish the repair.

---

[3]The record does not reflect the nature or purpose of the "E room."

[4]In its response, defendant has submitted the affidavits of Ms. Braun's supervisors, who aver that they never required Ms. Braun or any other employee to perform work before the start of a shift or after the end of shift and that they never told any employee that they had to be at their work stations 5 to 10 minutes before the start of a scheduled shift. At the notice stage, however, the court does not make credibility determinations or weigh conflicting evidence. *See Barnwell v. Corrections Corp. of Am.*, 2008 WL 5157476, at *5 (D. Kan. Dec. 9, 2008) (citing *Escobar v. Whiteside Constr. Corp.*, 2008 WL 3915715, *4 (N.D. Cal. Aug. 21, 2008) (where plaintiffs presented evidence concerning requirement of unpaid pre-shift work but plaintiffs' coworkers testified that pre-shift work was not required, plaintiffs nonetheless "have shown enough to justify certification")).

6

Plaintiffs also submit evidence concerning defendant's timekeeping software system that allegedly assisted defendant in obtaining "off the clock" work from its employees. According to defendant's interrogatory responses, defendant utilized at each of its facilities (and still utilizes at its current facilities) the Kronos time tracking system that automatically "rounded" pre-shift clock punches forward to each employee's scheduled start time, provided that employees punch in up to 17 minutes before the start of their shift. Similarly, the system automatically rounded post-shift clock punches backwards to each employee's scheduled end time, provided that employees punch out within 12 minutes of the end of their shift. According to plaintiffs, then, the pre- and post-shift time that they spent performing work was rounded away such that plaintiffs were not compensated for that time.[5]

**Discussion**

In their motion for conditional certification of this action as a collective action, plaintiffs seek conditional certification on behalf of "all current and former non-exempt plant employees working at Superior facilities since October 30, 2006." Plaintiffs assert that they are similarly situated to each other and to potential opt-in plaintiffs in that all were required to perform pre- and post-shift work without compensation. For several reasons, defendant opposes conditional

---

[5]In their factual statement, plaintiffs also reference a 2001 investigation conducted by the Department of Labor with respect to certain pay practices at defendant's Pittsburg, Kansas facility. Plaintiffs do not reference this investigation in their argument and defendant contends that the matter is irrelevant to the question before the court. The court agrees that the DOL investigation is not relevant to the issue of whether conditional certification is appropriate and has not relied on that evidence in any respect in resolving plaintiffs' motion.

certification of the class. In the alternative, defendant contends that certification should be limited to defendant's Pittsburg, Kansas facility.

To begin, defendant highlights three alleged deficiencies with plaintiffs' proposed class definition. First, the date suggested by plaintiffs–October 30, 2006–is obtained by measuring 3 years back from the date plaintiffs filed their complaint. As defendant argues, and plaintiffs concede in their reply brief, the appropriate measure of time is three years back from the date of the court's order granting conditional certification. Defendant also asserts that plaintiffs' class definition is deficient because it does not include any reference to any "single decision, policy or plan" to which potential class members were allegedly subjected. The court need not decide whether the omission is fatal, as plaintiffs readily agree in their submissions to amend their definition to include all current and former non-exempt plant employees "required to perform pre- and post-shift work without compensation." Finally, defendant contends that the class definition does not provide any specific job titles or job duties that "would appropriately be considered in defining a class." The court rejects this argument. The proposed class need not be limited to certain job titles or job duties when plaintiffs' theory is that all non-exempt employees–regardless of job title or duties–were required to perform pre- and post-shift work without compensation. To the extent, then, that defendant claims that there is no "common thread" tying putative class members together, the "common thread" is defendant's alleged requirement that non-exempt employees perform pre- and post-shift off-the-clock work. *See Marshall v. Amsted Indus., Inc.*, 2010 WL 2404340, at *6 (S.D. Ill. June 16, 2010) (fact that putative class members had different job duties and titles did not preclude certification where

8

lawsuit challenged one company policy applicable to all hourly workers–pre- and post-shift off-the-clock work). In analyzing plaintiffs' motion for conditional certification, then, the court considers whether to conditionally certify a collective action on behalf of the following class:

All current and former non-exempt plant employees of defendant who worked at any of defendant's facilities from September 28, 2007 to the present and who were required to perform pre- and post-shift work without compensation.

Aside from its objections to plaintiffs' class definition, defendant further asserts that certification is inappropriate because plaintiffs have failed to alleged what "work" they were required to perform without compensation. While defendant is correct that plaintiffs' sworn statements indicated only that plaintiffs were required to perform duties "necessary" to perform their jobs, Ms. Braun's interrogatory response and the deposition testimony of Ms. Braun and Mssrs. Raleigh and Lovell provide concrete examples of the types of tasks plaintiffs were allegedly required to perform without compensation, including completing and turning in paperwork, checking and repairing machines, participating in meetings, gathering necessary tools and donning and doffing "suits" and personal protective equipment. Defendant's argument, then, that plaintiffs have not identified any "work" that they were required to do simply lacks merit.[6]

---

[6]The court is not concerned at this juncture that the specific tasks that employees allegedly performed off-the-clock may have varied. *See Barnwell v. Corrections Corp. of Am.*, 2008 WL 5157476, at *4 (D. Kan. Dec. 9, 2008) (citing *Escobar v. Whiteside Constr. Corp.*, 2008 WL 3915715, *5 (N.D. Cal. Aug. 21, 2008) (fact that pre-shift off-the-clock claims might require individualized inquiries concerning length and nature of work did not render claims inappropriate for conditional certification; plaintiffs made the substantial

9

Defendant also dedicates a significant portion of its brief arguing that the Kronos time tracking system is lawful. But the relevant question presented by plaintiffs' motion is not whether the Kronos system itself is lawful or unlawful, but whether plaintiffs are required to perform pre- and post-shift work without compensation. In other words, even assuming that the rounding system itself is lawful, plaintiffs would still be entitled to conditional certification so long as they come forward with substantial allegations that they were required to work off-the-clock. Defendant also contends that the record does not support plaintiffs claims that they were required to work off-the-clock because, on many occasions, plaintiffs clocked in within two minutes of her scheduled start time and clocked out at the exact time her shift was scheduled to end. Indeed, defendant, in painstaking detail, has analyzed plaintiff-by-plaintiff the number and percentages of "punches" that tend to reflect that no pre- or post-shift work was being performed. Of course, plaintiffs are not required to establish that they performed pre- and post-shift work before and after each shift. They simply have to establish (and, at this juncture, come forward with only substantial allegations) that defendant failed to compensate them for all hours worked in excess of 40 hours during one or more workweeks.

In the alternative, defendant contends that conditional certification should be limited to its Pittsburg, Kansas facility. Before turning to whether certification is appropriate for other facilities, the court does conclude that conditional certification is appropriate for purposes of

---

allegation that they were victims of a single illegal policy, plan, or decision-they "were required to arrive early to the construction yard and work more than their shifts required, without commensurate compensation")).

sending notice to non-exempt plant employees formerly employed at defendant's Pittsburg, Kansas facility. Plaintiffs' submissions contain sufficiently substantial allegations that non-exempt employees at the Pittsburg facility were "together the victims of a single decision, policy, or plan." *See Thiessen*, 267 F.3d at 1102. Significantly, plaintiffs have submitted sworn statements from several former employees at the Pittsburg facility who each aver that they were required to perform pre- and post-shift work without compensation; that they observed numerous other employees in the plant performing pre- and post-shift work; and that defendant's timekeeping system rounded away time spent performing pre- and post-shift work. The sworn statement of Mr. Murphy adds additional force to plaintiffs' evidence in that Mr. Murphy avers that he "enforced" the pre- and post-shift work requirement in his role as a Team Leader. The deposition excerpts of former Pittsburg employees further support plaintiffs' theory that Pittsburg employees were routinely required to perform a variety of pre- and post-shift work without compensation. Finally, Ms. Braun and Mr. Murphy provide evidence that they were advised by supervisors that employees were required to arrive at work early in order to perform tasks before the start of a shift. Plaintiffs' allegations (and, indeed, evidence) are sufficient to support conditional certification. *See, e.g., Douglas v. First Student, Inc.*, 2010 WL 129666, at *3 (E.D. Ark. Jan. 11, 2010) (granting motion for conditional certification where plaintiffs alleged common policy of refusing to compensate employees for pre- and post-shift work); Zivali v. AT&T Mobility LLC, 646 F. Supp. 2d 658, 661-62 (S.D.N.Y. 2009) (same); *Russell v. Illinois Bell Tel. Co.*, 575 F. Supp. 2d 930, 932-34 (N.D. Ill. 2008) (granting motion for conditional certification where plaintiffs alleged common policy of requiring employees to

11

perform pre- and post-shift work and failing to compensate employees for such work); *Escobar v. Whiteside Constr. Corp.*, 2008 WL 3915715, \*4 (N.D. Cal. Aug. 21, 2008) (granting motion for conditional certification where plaintiff alleged common policy of requiring pre-shift work and refusing to compensate employees for such work); *Nelson v. American Standard, Inc.*, 2008 WL 906324, at \*1-2 (E.D. Tex. Mar. 31, 2008) (granting motion for conditional certification where defendant required employees to perform pre- and post-shift work tasks but only paid employees according to their specified shift time).

That being said, the court cannot grant conditional certification with respect to any other facilities. None of the named plaintiffs or the opt-in plaintiffs purport to have any knowledge of the pay practices in defendant's Johnson City, Tennessee; Van Nuys, California; or Rogers, Arkansas facilities. Moreover, there are no allegations or evidence from which the court could infer that employees in those facilities are required to perform pre- and post-shift work. In this court's *Barnwell* decision, for example, the court conditionally certified a class of employees from 65 facilities where the plaintiffs had provided sworn statements from 200 corrections officers representing numerous facilities in various states such that the court could infer that the alleged policy of pre- and post-shift work was indeed a company-wide policy. *Barnwell v. Corrections Corp. of Am.*, 2008 WL 5157476, at \*3 (D. Kan. Dec. 9, 2008). By contrast, the nature of the alleged policy here does not readily support company-wide certification, as plaintiffs' submissions indicate that the alleged policy was implemented by a handful of "rogue" supervisors in the Pittsburg facility (as opposed to some company-wide directive).

While plaintiffs contend that the Kronos time keeping system is the "common thread"

tying all facilities together, plaintiffs are not seeking certification of a class of employees subjected to the Kronos system–they are seeking certification of a class of employees required to perform pre- and post-shift work without compensation. Defendant's use of the Kronos system, standing alone, does not mean that employees subject to the system are necessarily performing pre- and post-shift work. *Compare Zivali*, 646 F. Supp. 2d at 662 (use of timekeeping system at all retail stores deemed significant where pre- and post-shift work necessarily occurred at every retail location and would not have been captured by time-keeping system). Plaintiffs' submissions, then, are not adequate to support conditional certification with respect to defendant's Johnson City, Tennessee; Van Nuys, California; and Rogers, Arkansas facilities.

That leaves consideration of plaintiffs' submissions concerning defendant's Fayetteville facility. After disregarding the sworn statement of Mr. Williams, the only individual with any knowledge of the Fayetteville facility is opt-in plaintiff Mr. Raleigh. He testified that he worked as a maintenance employee during his entire tenure at the Fayetteville facility and that, for a significant portion of that time, he was required to come to work early to complete a "checklist" of tasks prior to the start of his shift, including checking the dust collectors and ensuring that certain machines were functioning properly. He testified that his supervisors never told him that he had to come to work early, but that it was "understood" that the machinery had to be ready for production and, accordingly, that the checking of the machines had to be done before the next shift started. With respect to post-shift work, Mr. Raleigh testified that such work was required only if he was in the middle of repairing equipment and, in such circumstances, he would stay

13

after his shift and finish the repair.

The court concludes that plaintiffs' submissions are inadequate to warrant conditional certification with respect to defendant's Fayetteville facility.[7] At the most, Mr. Raleigh's deposition testimony supports the theory that maintenance workers in the Fayetteville facility were routinely required to perform pre-shift work. But Mr. Raleigh's testimony, standing alone, simply does not permit the inference that non-maintenance workers were required to perform pre-shift work or post-shift work. Indeed, Mr. Raleigh admitted that he was never told he had to perform pre-shift work, he simply "understood" that fact based on the nature of his job duties (*i.e.*, any particular maintenance that the machines needed necessarily had to be completed prior to the start of production). Nothing else in plaintiffs' submissions or the nature of plaintiffs' theory permits an inference that off-the-clock work was required for all nonexempt employees at the Fayetteville facility. The court, then, will limit conditional certification in this case to defendant's Pittsburg, Kansas facility.

**Proposed Notice**

To the extent the court has concluded that this action should be conditionally certified for

---

[7]Defendant asserts that conditional certification with respect to Fayetteville is inappropriate because, in the absence of Mr. Williams, there is no named plaintiff representative of the Fayetteville facility. Plaintiffs, however, are not required to have a representative from each facility–or even evidence of a specific violation from each facility–prior to seeking companywide collective treatment. *See Sharpe v. APAC Customer Serv., Inc.*, 2010 WL 135168, at *6 (W.D. Wis. Jan. 11, 2010). The key is whether the plaintiffs' factual showing is sufficient to permit an inference that a company-wide policy exists for purposes of authorizing company-wide notice.

purposes of notifying potential members of the class, plaintiffs request the court to order the following:

> That the parties meet and confer in an attempt to reach agreement on the form and substance of the proposed notice (including a proposed deadline for the potential opt-in plaintiffs to join this action by filing consents with the court) to potential class members;
>
> That if an agreement is reached, then the parties shall submit the proposed notice to the court for approval within ten (10) days of the court's order;
>
> That if the parties are unable to reach an agreement, then plaintiffs shall file a motion within ten (10) days of the date of this order seeking approval of their proposed form of notice. Defendant must then file its objections to plaintiffs' proposed notice and submit an alternate proposed form of notice within ten (10) days of plaintiffs' motion seeking approval of their proposed notice; and
>
> To facilitate mailing of the notice, that defendant, within fourteen (14) days of the court approving the notice, provide to plaintiffs a list of all employees constituting the class, with their last known addresses, phone numbers, social security numbers, and dates of employment in an agreeable format for mailing.

Defendant does not object to plaintiff's proposed schedule and, in the absence of an objection, the court will adopt it.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' motion for conditional class certification under § 216(b) of the FLSA (doc. 66) is granted in part and denied in part. The parties are directed to meet and confer concerning the proposed notice as detailed in this order.

**IT IS SO ORDERED**.

Dated this 28th day of September, 2010, at Kansas City, Kansas.

                                              s/ John W. Lungstrum  
                                              John W. Lungstrum  
                                              United States District Judge